Erin E. LAWLER, Individually, and as the Administratrix of the Estate of Jeremy Lawler, Plaintiff,

v.

FIREMAN'S FUND INSURANCE, COMPANY, et al., Defendants.

No. 101CV503.

United States District Court, N.D. Ohio, Eastern Division.

Aug. 28, 2001.

Kenneth L. Gibson, Weick, Gibson & Lowry, Cuyahoga Falls, OH, Stanley P. Aronson, Aronson & Associates, Akron, OH, for Eric E. Lawler.

Janice P. Aitken, Laura M. Faust, Ronald B. Lee, Roetzel & Andress, Akron, OH, Kimberly A. Brennan, Paul D. Eklund, Davis & Young, Cleveland, OH, for Fireman's Fund Insurance Co.

Thomas J. Wilson, Comstock, Springer & Wilson, Youngstown, OH, for State Farm Ins. Co.

## OPINION

GWIN, District Judge.

With this case, the Court deals with the mess created by the Ohio Supreme Court's treatment of uninsured/underinsured motorist coverage. Ignoring Justice Douglas's observation that "common sense often makes good law," the Ohio Supreme Court has destroyed the crucial predictability needed to price and administer commercial business automobile and general commercial liability policies lines. *Peak v. United States,* 353 U.S. 43, 46, 77 S.Ct. 613, 1 L.Ed.2d 631 (1957). A muddle results.

Against this sorry backdrop, the Court now deals with the July 23, 2001, motion for summary judgment filed by Third–Party Defendant State Farm Insurance Company ("State Farm") [Doc. 47] and the July 25, 2001, motion for partial summary judgment filed by Plaintiff Erin E. Lawler [Doc. 56]. In deciding these motions, the Court determines whether a commercial general liability policy that explicitly limits its coverage of employees "only for acts within the scope of their employment for you" and which specifically denies coverage for "bodily injury ... arising out of the ... use ... of any non-owned auto" should respond when the non-employee husband of an employee dies while operating a non-company car on personal business.

To restate the question reflects how far afield the Ohio Supreme Court has taken this issue. When an insurer issues a commercial general liability policy to a corporation in which the insurer declines to cover automobile claims except ones involving vicarious liability, should the insurer be obligated to pay claims arising out of the death of a non-employee who is not driving a corporate vehicle and who is engaged in a wholly personal activity? The Court finds that the State Farm commercial general liability policy issued to

Guiseppes Pizza, Inc. ("Guiseppes Pizza"), under which Plaintiff Lawler seeks to collect, does not cover this risk.

## I

The tragic circumstances of this case reflect the distortion the Ohio Supreme Court has inflicted upon the law dealing with uninsured/underinsured motorist coverage. In deciding these motions, the Court decides whether the Estate of Jeremy Lawler can recover underinsured motorist benefits. Plaintiff Erin Lawler is the Administratrix of the Estate of Jeremy Lawler. Erin Lawler was married to Jeremy Lawler at the time of his death.

The plaintiff does not here seek recovery under Jeremy Lawler's own policy. Decedent Jeremy Lawler only had $100,000 of underinsured motorist coverage and his Estate has been paid that amount. Instead, Plaintiff Lawler asks for underinsured motorist benefits under a commercial general liability policy issued by Defendant State Farm to Guiseppes Pizza. Guiseppes Pizza never employed Decedent Jeremy Lawler. Jeremy Lawler was not driving a vehicle owned by Guiseppes Pizza at the time of the accident leading to his death.

On April 19, 1997, Jeremy Lawler was fatally injured in a motor vehicle accident caused by the negligence of tortfeasor Mark Busser. Busser also died as a result of the accident. At the time of the accident, Jeremy Lawler was driving his own vehicle for a personal, nonbusiness related purpose.

Although Guiseppes Pizza never employed Jeremy Lawler and Jeremy Lawler was on personal business in his own vehicle at the time of the accident, Plaintiff Lawler says Defendant State Farm, the insurer of Guiseppes Pizza, should pay underinsured motorist benefits. Plaintiff Lawler says State Farm should pay these benefits even though State Farm's commercial general liability policy with Guiseppes Pizza specifically disclaims benefits for "bodily injury . . . arising out of the use . . . of any . . . auto operated by . . . any insured."

At the time he died, Jeremy Lawler was survived by his wife, Erin E. Lawler, and his daughters, Lindsay and Lauren Lawler. At the time of the accident, Jeremy and his family resided with Erin's parents, Kenneth and Jacalyn Thomas, and her brother, Matthew Thomas.

The tortfeasor, Mark Busser, had an automobile liability policy with State Farm Insurance Company with a $50,000 limit. On July 14, 1998, State Farm, on behalf of Busser, paid the Estate of Jeremy Lawler, the limits of Busser's policy. The Estate released Busser and State Farm from claims against Busser.

At the time of the accident, Jeremy Lawler had his own insurance policy with State Farm. In purchasing an automobile policy with uninsured/underinsured coverage, Jeremy Lawler chose to purchase only $100,000 of underinsured motorist coverage. Jeremy Lawler's Estate made a claim for underinsured motorist benefits against this policy. In response to this claim, State Farm paid $50,000, compensating Jeremy Lawler up to the $100,000 limit of the underinsured motorist coverage he had purchased. Because Mark Busser had only $50,000 of liability coverage and because Jeremy Lawler had purchased only a small amount of underinsured motorist coverage, his Estate did not receive full compensation for the damage caused by Busser's negligence.

Having exhausted the limits of Busser's liability coverage and the underinsured motorist coverage benefits purchased by Jeremy Lawler, Plaintiff Lawler made claim in this action against Fireman's

Fund Insurance Company ("Fireman's Fund"). Fireman's Fund insured Modern Tool & Dye Products, Inc. ("MTD") who had employed Jeremy Lawler for ninety-seven days at the time of the accident.

Although Jeremy Lawler had not been working or carrying out duties for MTD, Plaintiff Lawler said she should receive underinsured motorist benefits under the $2 million business automobile policy of insurance MTD purchased from Fireman's Fund. Plaintiff Lawler also made claim against the St. Paul Fire and Marine Insurance Company ("St.Paul"), who had issued an umbrella policy to MTD with a $10 million liability limit. Plaintiff Lawler premised her claim against the Fireman's Fund upon the Ohio Supreme Court's opinions in *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.*, 85 Ohio St.3d 660, 710 N.E.2d 1116 (1999), and *Ezawa v. Yasuda Fire & Marine Ins. Co. of Am.*, 86 Ohio St.3d 557, 715 N.E.2d 1142 (1999).

On April 3, 2001, Fireman's Fund filed a Third–Party Complaint against State Farm Fire & Casualty Company. State Farm insured Guiseppes Pizza, who employed Erin Lawler at the time of the accident. With its Third–Party Complaint, Fireman's Fund sought contribution from Defendant State Farm for any amount that Fireman's Fund was required to pay.

After mediation, Plaintiff Lawler settled her claims against Defendant Fireman's Fund. Under that settlement, Fireman's Fund paid consideration worth $900,000. As part of Defendant Fireman's Fund's settlement, Fireman's Fund assigned its claim against State Farm to Plaintiff Lawler. On August 9, 2001, the plaintiff also settled her claims against St. Paul for $40,000. To date, the Plaintiff has recovered $1,040,000.

With her motion for summary judgment, Plaintiff Lawler says she should receive judgment declaring that she is entitled to underinsured motorist coverage wider the State Farm policy issued to Guiseppes Pizza. She says that even though the commercial general liability policy generally excludes coverage for automobile accidents, it is a "motor vehicle liability policy" for purposes of Ohio's underinsured motorist coverage law, Ohio Rev.Code § 3937.18. Arguing that State Farm did not make an effective offer of underinsured motorist coverage nor receive an effective rejection, Plaintiff Lawler says such coverage arose by law. If State Farm provides underinsured motorist coverage as a matter of law, Lawler argues that policy provisions stopping coverage for automobile injuries are nugatory.

Defendant State Farm makes three main arguments for summary judgment. First, State Farm argues that the general commercial liability policy that Guiseppes Pizza purchased is not a motor vehicle policy required to offer underinsured motorist coverage. Second, State Farm says that neither Plaintiff Lawler nor Decedent Jeremy Lawler were insureds under the State Farm Policy. Finally, State Farm argues that any coverage under the State Farm Policy to Guiseppes Pizza is secondary to underinsured motorist coverage benefits already received from tortfeasor Mark Busser, from Fireman's Fund, the insurer of MTD, and from St. Paul, the umbrella insurer of MTD.

The Court now considers the arguments made by the parties.

## II. The State Farm Insurance Policy

On April 19, 1997, the date of Jeremy Lawler's accident, Guiseppes Pizza employed Erin Lawler, the wife of Jeremy Lawler. In that position with Guiseppes Pizza, Erin Lawler made pizzas and answered the phones. Guiseppes Pizza provided no delivery services and Erin Lawler operated no company vehicles.

Guiseppes Pizza was covered for certain liability under a business insurance policy with State Farm Fire & Casualty Company, policy number 95–53–4624–8 ("State Farm Policy"). The State Farm Policy was effective December 11, 1996 to December 11, 1997 and had coverage limits of $1 million.

The State Farm Policy affords business liability coverage. It provided:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury . . . to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under supplementary payments. This insurance applies only:
>
> (1) to bodily injury . . . caused by an occurrence which takes place in the coverage territory during the policy period;
>
> (2) to personal injury caused by an occurrence committed in the coverage territory during the policy period. *The occurrence must arise out of the conduct of your business,* excluding advertising, publishing, broadcasting or telecasting done by or for you; . . . .

State Farm Policy, Section II Comprehensive Business Liability—Coverage L, State Farm's Motion for Summary Judgment, Exhibit E, p, 20 [hereinafter "State Farm Policy at __"] (emphasis added).

The State Farm Policy limits who is insured under the policy. State Farm's agreement with Guiseppes Pizza states:

> 1. If you are designated in the Declarations as:
>
> . . . .
>
> c. an operation other than a partnership or a joint venture, you are an insured. Your executive officers, directors, and trustees are insureds but only with respect to their duties as your

officers, directors or trustees. Your stockholders are also insureds but only with respect to their liability as stockholders.

> 2. Each of the following is also an insured: (a) your employees, other than your executive officers, but only for acts within the scope of their employment by you. However, no employee is an insured for: . . . (4) bodily injury or property damage arising out of the ownership, maintenance, use or entrustment to others of any non-owned auto or any agent or employee of an owner of any non-owned auto.

State Farm Policy at 27.

The State Farm Policy excludes certain coverage. The policy states:

> Under Coverage L, this insurance does not apply: . . .
>
> 7. to bodily injury . . . arising out of the ownership, maintenance, use, or entrustment to others of any aircraft, auto or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and loading or unloading.
>
> . . . .
>
> This exclusion does not apply to: . . . (e) bodily injury or property damage arising out of the use of any non-owned auto in your business by any person other than you;

State Farm Policy at 22–23.

The State Farm Policy also limits coverage where other insurance is available. The Policy provides:

> 8. Other Insurance
>
> . . . .
>
> b. Section II
>
> (1) The insurance provided under Coverage L—Business Liability is excess insurance over any other insurance not

written by us which would apply if this policy had not been written.

(2) The total insurance provided under Coverage L—Business Liability and any other policy written by us will not exceed the largest limit of insurance applicable under anyone of these policies written by us.

State Farm Policy at 35.

To summarize, State Farm issued a general commercial liability policy written to Guiseppes Pizza with certain features. First, the State Farm Policy provides a specific description of who it insures. In limiting those covered under is protection, the State Farm Policy differs from the policy at issue in *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.*, 85 Ohio St.3d 660, 710 N.E.2d 1116 (1999). Second, the State Farm Policy specifically excludes automobile coverage. Third, the State Farm Policy prevents the stacking of its coverage with coverage provided by other insurance policies.

### III. Discussion

For the sake of clarifying the convoluted arguments surrounding the nature of the coverage of the State Farm Policy, the Court first discusses whether the coverage is primary or excess. Next, the Court discusses Ohio law interpreting motor vehicle liability policies and determines that the State Farm Policy is not such a policy under Ohio Rev.Code § 3937.18. Finally, the Court discusses the Ohio Supreme Court's decision in *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.*, 85 Ohio St.3d 660, 710 N.E.2d 1116 (1999), and explains that even if the State Farm Policy could be construed as motor vehicle liability policy, Plaintiff Lawler is not an insured under the State Farm Policy.

A. The State Farm Policy provides excess coverage that is shared pro rata with the Fireman's Fund policy

As later described, Erin Lawler and Jeremy Lawler were not insured under the

State Farm Policy. But even if they were insured, they would be limited in the amount of benefits they could receive.

■ Relying on Ohio Rev.Code § 3937.18(G), Plaintiff Lawler says State Farm cannot import the "other insurance" provisions from the liability section of its policy into the uninsured/underinsured coverage that Lawler says arises by operation of law. The plaintiff concludes that if the "other insurance" provisions do not apply then State Farm must have provided primary coverage, even though neither party contemplated such a result.

The plaintiff says the excess coverage provision in the State Farm Policy cannot apply to the uninsured/underinsured coverage. Section 3937.18(G), at the time relevant to this case, said:

Any automobile liability or motor vehicle liability policy of insurance that includes coverages offered under division (A) of this section may, without regard to any premiums involved, include terms and conditions that preclude any and all stacking of such coverages, including but not limited to:

(1) Interfamily stacking, which is the aggregating of the limits of such coverages by the same person or two or more persons, whether family members or not, who are not members of the same household;

(2) Intrafamily stacking, which is the aggregating of the limits of such coverages purchased by the same person or two or more family members of the same household.

Ohio Rev.Code § 3937.18(G).

State Farm did not offer underinsured motorist coverage to Lawler under § 3937.18(A). Most likely, State Farm did not formally offer coverage because none

could anticipate that the Ohio Supreme Court would stretch to find motor vehicle liability coverage in a commercial general liability policy that was never intended to deal with motor vehicle liability coverage.

Irrespective, the plaintiff says that coverage arises by operation of law. The plaintiff says because State Farm did not comply with § 3937.18(A), it cannot import any language that precludes stacking of coverages as allowed under § 3937.18(G).

However, the plaintiff ignores the clear intent of the Ohio General Assembly. The General Assembly amended § 3937.18 to include division (G) in order "to permit *any* motor vehicle insurance policy that includes uninsured motorist coverage and underinsured motorist coverage to include terms and conditions to preclude any and all stacking of such coverages, including interfamily and intrafamily stacking." 1994 Ohio Laws 184 (S.B.20, § 9) (emphasis added). The legislature did not make any distinction between coverage provided by terms of the policy or by operation of law.

Furthermore, the legislature did not indicate that conditions of an insurance policy, such as whether coverage is excess or primary, should not apply to coverage that arises by operation of law.[1] State Farm and Guiseppes Pizza agreed to the State Farm Policy. In the policy, both parties agreed that liability coverage provided by State Farm would be in excess to other insurance collectable by Guiseppes Pizza. There is no support for the plaintiff's assertion that the uninsured/underinsured coverage that allegedly arises by operation of law is not bound by the same conditions expressly agreed to by the parties.

■ The defendant also says that its policy was excess coverage to the protection provided by the tortfeasor, the plaintiff's original insurer, and the policy provided by Fireman's Fund. In addition, the defendant says that under § 3937.18(A)(2) it is only obligated to pay money to the plaintiff if all other insurance coverage is exhausted. Because Fireman's Fund settled its case for less than the $2 million policy limit, State Farm says it is not required to provide any money to the plaintiff.

The Court begins its analysis with the relevant language of State Farm's and Fireman's Fund insurance policies. State Farm lists one of the conditions under its business liability coverage as:

(1) The insurance provided under Coverage L—Business Liability *is excess insurance over any other insurance not written by us which would apply if this policy had not been written.*

(2) The total insurance provided under Coverage L—Business Liability and any other policy written by us will not exceed the largest limit of insurance applicable under any one of these policies written by us.

(State Farm Policy at 34–35) (emphasis added).

---

1. The plaintiff says the Ohio Supreme Court's decision in *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.,* 85 Ohio St.3d 660, 710 N.E.2d 1116 (1999) held that terms of an insurance policy do not apply to coverage that arises by operation of law. The plaintiff overstates *Scott–Pontzer*'s holding. The *Scott–Pontzer* Court held that the terms of a liability policy would not restrict who was covered by uninsured/underinsured coverage that arose by operation of law. *Id.* at 666, 710 N.E.2d at 1120. However, the holding was specific as to who would be covered. *Scott–Pontzer* did not say that additional conditions concerning payment, such as whether coverage was primary or excess with respect to other possible insurance, were ignored. As discussed in a later section, such a conclusion reaches an absurd result.

The State Farm Policy clearly shows that the parties meant the business liability protection offered by the policy to act as coverage excess to any other applicable insurance. As the State Farm Policy provided general business liability coverage, there is no reason to believe that the parties would not want any coverage under the policy to be excess coverage.

Similarly, the uninsured/underinsured coverage part of the Fireman's Fund policy only provides excess coverage:

b. *Any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible uninsured motorists insurance providing coverage on a primary basis,*

c. If the coverage under this Coverage Form is provided:

. . . .

(2) On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

(Fireman's Fund Policy—Ohio Uninsured Motorists Coverage (CA 21 33 06 95) at 2, Fireman's Fund Motion for Summary Judgement, Exhibit 4) (emphasis added).

Jeremy Lawler was killed while driving his own car. The car was not owned by Guiseppes Pizza nor was it being used for Guiseppes Pizza business when the accident occurred. For that matter, the vehicle was not owned by MTD nor was it being used for MTD's business when the accident occurred. The Fireman's Fund policy is clearly excess coverage with respect to the claim by Jeremy Lawler's estate.

■ Therefore, the State Farm Policy and the Fireman's Fund policy are excess coverage for the same risk. Under Ohio law, "where two insurance policies cover the same risk and both provide that their liability with regard to that risk shall be excess insurance over other valid, collectible insurance, the two insurers become liable in proportion to the amount of insurance provided by their respective policies." *Buckeye Union Ins. Co. v. State Auto. Mut. Ins. Co.*, 49 Ohio St.2d 213, 218, 361 N.E.2d 1052, 1055 (1977).

The State Farm Policy has a limit of $1 million while the Fireman's Fund policy has a limit of $2 million. Under a pro rata distribution, State Farm would be responsible for one-third of the damages awarded to Lawler minus the amount already recovered from primary coverage insurance.

State Farm also argues that because its policy is an "excess" policy whereas the Fireman's Fund policy calls for pro rata payments, the Fireman's Fund policy must be considered first. This distinction is without importance. Both polices clearly label themselves as excess policies. The pro rata provision in the Fireman's Fund policy merely indicates how the company will compensate an insured in the case when there is more than one policy providing excess coverage. Nothing in the State Farm Policy indicates that the Fireman's Fund policy must be exhausted before Lawler can collect from State Farm.

Finally, the defendant says it does not need to pay anything because Lawler's total recovery to date is in excess of the State Farm Policy's $1 million limit. State Farm asserts that § 3937.18(A)(2) allows it to setoff any possible payment by the $1,040,000 Lawler has received from tortfeasor Busser's insurance, Jeremy Lawler's personal insurance, and the settlement payments from Fireman's Fund and St. Paul. In support of its position, State Farm relies on the following language: "The policy limits of the underinsured mo-

torist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured." Ohio Rev.Code § 3937.18(A)(2).

█ Section 3937.18(A)(2) was recently interpreted by the Ohio Supreme Court in *Clark v. Scarpelli*, 91 Ohio St.3d 271, 744 N.E.2d 719 (2001). The *Scarpelli* court held that "[f]or the purpose of setoff, the 'amounts available for payment language' in R.C. 3937.18(A)(2) means the amounts actually accessible to and recoverable by an underinsured motorist claimant from all bodily injury liability bonds and insurance policies (including from the tortfeasor's liability carrier)." 91 Ohio St.3d at 271, 744 N.E.2d at 721.

In interpreting § 3937.18(A)(2), the *Scarpelli* court emphasized that "underinsured motorist coverage ... was not intended to be 'excess insurance' to the tortfeasor's applicable automobile liability insurance." *Id.* at 276, 744 N.E.2d at 725. Nor were insureds to receive greater benefits because they were injured by uninsured motorists rather than underinsured motorists. *Id.* Therefore, an injured policy holder need only setoff money actually recovered from the tortfeasor's liability insurance and other insurance policies.[2]

2. The *Scarpelli* court best demonstrated its reasoning through a series of examples in a footnote. While long, the Court finds the examples helpful.

Suppose one person ("Craig") is injured in an automobile accident caused by an insured tortfeasor ("Bob"). Bob has automobile liability insurance with limits of $100,000 per person and $300,000 per accident. Craig has provable damages of $150,000. Craig recovers $100,000 from Bob's insurer. Craig has automobile liability insurance that includes a provision for UM/UIM motorist coverage with limits of $100,000 per person and $300,000 per accident. Pursuant to R.C. 3937.18(A)(2), Craig's automobile liability carrier can "set off" the $100,000 that Craig received from Bob's automobile liability carrier. Thus, since the tortfeasor's (Bob's) limits and the injured claimant's (Craig's) limits are the same, Craig receives nothing from his underinsured motorist coverage even though his provable damages are $150,000. This outcome is consistent with the interpretation of the setoff provision and the "amounts available for payment" language of R.C. 3937.18(A)(2). That is, Craig's underinsured motorist coverage cannot be accessed as "excess insurance" and Craig is not any better or any worse off than if the tortfeasor had been *un*insured as opposed to *under*insured. In either instance, Craig would recover only $100,000 as compensation for his injuries.

Now suppose that, in addition to Craig, there are three other passengers traveling in Craig's automobile. All four occupants suffer injuries as a result of Bob's negligence and sustain provable damages in excess of $100,000 each. Each person in Craig's vehicle has separate automobile liability insurance policies that include UM/UIM coverage provisions of $100,000 per person and $300,000 per accident. Bob's insurer pays $300,000, the per-accident limit of liability, to Craig and his three passengers. Thus, assuming equal distribution, each person in Craig's vehicle receives $75,000.

Suppose that the setoff provision of R.C. 3937.18(A)(2) and the "amounts available for payment" language are interpreted using a strict policylimits-to-policy-limits comparison approach. In that instance, each passenger's automobile liability insurer would be permitted to set off the $300,000 per-accident limit of the tortfeasor's policy against the policy limits of each passenger's UM/UIM motorist coverage. Thus, since the tortfeasor's liability policy limits ($100,000/300,000) equals or exceeds the per-person limits ($100,000) of each individual's policy, neither Craig nor his three passengers would recover under the provisions of their underinsured motorist coverage. The net effect of permitting each person's insurer to set off the per-accident limit of the tortfeasor's policy is, in this instance, to credit each insurer with the same $300,000 obtained from the tortfeasor's insurer when, of course, only a total of $300,000 (not $1,200,000) was actually distributed to the injured claimants.

The plaintiff says the setoff provision of § 3937.18(A)(2) only applies to a tortfeasor's liability policy and not to additional insurance held by the injured party. *Id.* at 276, 744 N.E.2d at 725. However, *Scarpelli* clearly says "amounts available for payment" refers to the money collectable from *all* bodily liability bonds and insurance policies. *Id.* There is no indication the Ohio General Assembly intended to limit setoff solely to the tortfeasor's liability insurance. Uninsured/underinsured coverage policies are intended to compensate injured parties only to the limits of their insurance in the event the tortfeasor is inadequately insured.

Allegedly, the State Farm Policy provides Plaintiff Lawler $1 million in uninsured/underinsured coverage. However, $100,000 of the policy limit is offset by the money Plaintiff Lawler collected from the tortfeasor's estate and Jeremy Lawler's personal insurance. Therefore, the most Plaintiff Lawler can collect from State Farm is $900,000.

Plaintiff Lawler then received $900,000 upon settling with Fireman's Fund. State Farm says that because the plaintiff has been compensated up to the $1 million limit of the policy, State Farm does not owe anything. However, as discussed above, the State Farm Policy and the Fireman's Fund policy both provide excess coverage. Payment of that coverage is to be done on a pro rata basis. If subject to Plaintiff Lawler's claims, Defendant Fireman's Fund is entitled to attempt to recover one-third ($300,000) of the amount it has paid.

In the settlement agreement between Fireman's Fund and the plaintiff, Fireman's Fund assigned all of its possible claims for indemnification, contribution, subrogation, or reimbursement to Plaintiff Lawler in consideration of the agreement. Plaintiff Lawler is thus entitled to pursue this action on behalf of Firemen's Fund.

Under the State Farm Policy, the plaintiff cannot collect more than the $300,000 State Farm allegedly owes Fireman's Fund. She has already collected more than the $1 million limit of the State Farm Policy. Even if the plaintiff's damages were determined to be higher than the money already collected, State Farm's obligation to compensate the plaintiff ended once the $1 million limit was exceeded.

The uninsured/underinsured coverage exists to ensure an injured party is compensated if the tortfeasor is inadequately

---

If, however, Craig and his passengers had been injured by an *un*insured motorist, each person would have a separate *un*insured motorist claim against his or her own insurer and would be able to collect *un*insured motorist benefits up to the $100,000 per person limit. Thus, comparing the two examples with the stated purpose and intent of R.C. 3937.18(A)(2), Craig and his passengers would certainly be in a better position financially speaking had they been injured by an *un*insured tortfeasor.

Conversely, by interpreting the "amounts available for payment" language in R.C. 3937.18(A)(2) to mean those amounts that each claimant can actually access or recover from the tortfeasor's automobile liability carrier, the result is the same whether Craig and his passengers are injured by an *un*insured tortfeasor or by an *under*insured tortfeasor. Accordingly, where the "amounts available for payment" from the tortfeasor to each occupant is $75,000, each person in Craig's vehicle could access up to an additional $25,000 in underinsured motorist benefits from his or her automobile liability carrier with no one person being able to recover more than his or her $100,000 per-person policy limit. Under this interpretation, the result is the same whether Craig and his passengers are injured by an uninsured tortfeasor or by an underinsured tortfeasor—the result mandated by the General Assembly when it expressed, in the statute, the purpose for enacting the mandatory offering of *under*insured motorist coverage.

91 Ohio St.3d at 279 n. 3, 744 N.E.2d at 728.

insured. The $100,000 collected from the tortfeasor and Jeremy Lawler's personal insurance did not adequately compensate the plaintiff. If subject to claim, the State Farm Policy would allow the plaintiff to receive up to $1 million, assuming her damages merited such an award and she is not compensated by other insurance. However, under the State Farm Policy, Plaintiff Lawler is entitled to no more than a $1 million in uninsured/underinsured coverage. Since she has received the limit, she could not collect anymore money from State Farm even if her damages were shown to be higher than $1 million.

### B. Whether the State Farm Policy is a motor vehicle policy subject to Ohio Rev.Code § 3937.18

■ Although the State Farm Policy is a commercial general liability policy that "does not apply ... to bodily injury ... arising out of the ... use ... of any ... auto," Plaintiff Lawler says that underinsured motorist coverage arises by operation of law. Despite its specific rejection of motor vehicle coverage, Plaintiff Lawler claims the State Farm Policy made provision for "non-owned auto" coverage. Such coverage, Lawler contends, is sufficient to require the insurer to offer underinsured motorist coverage. Lawler says that absent such an offer and a rejection, coverage arises as a matter of law. Plaintiff Lawler says such coverage applies to her claims even though her husband never worked for Guiseppes Pizza, was not operating a vehicle owned by Guiseppes Pizza,

and was carrying out a personal errand at the time of the accident. The Court does not agree.

Lawler relies upon *Selander v. Erie Ins. Group*, 85 Ohio St.3d 541, 709 N.E.2d 1161 (1999). In *Selander*, the Ohio Supreme Court found that liability coverage for accidents involving hired or non-owned automobiles brought it within the class of policies in which underinsured motorist coverage arises by operation of law.

The *Selander* plaintiffs made a claim under a commercial general liability policy issued to their employer. At the time of the accident, the plaintiffs were working in the course and scope of their business activities. Although the policy generally excluded coverage for automobile claims, it did provide liability coverage for "hired" or "non-owned" automobiles. *Id.* at 543, 709 N.E.2d at 1162. Such coverage deals with vicarious liability arising out of the use of unspecified "hired" or "non-owned" automobiles.

Like the instant case, the commercial general liability policy involved in *Selander* provided "non-owned" automobile liability coverage. Further, both the *Selander* policy and the State Farm Policy define "non-owned" automobile in the same way and extended coverage for such automobiles only when they are being used for the business's purpose.[3]

The Ohio Supreme Court held that the commercial general liability policy in *Selander* was a motor vehicle liability policy subject to Ohio Rev.Code § 3937.18.[4] In

---

**3.** Both the State Farm Policy and the *Selander* policy define "non-owned" automobile as:

"Non-owned automobile" means any automobile you do not own, lease, hire or borrow which *is used in connection with your business*. However, if you are a partnership, a non-owned automobile does include any automobile owned by or registered in the name of a partner, but *only while such automobile is being used in your business.*

State Farm Policy at 32 (emphasis added); *Selander*, 85 Ohio St.3d at 543, 709 N.E.2d at 1163.

**4.** Ohio Rev.Code § 3937.18 was amended, effective September 3, 1997, after the policy involved in this case was issued. As amended, the current Ohio Rev.Code § 3937.18 limits underinsured motorist coverage claims to policies that can be used as proof of financial

making this decision, the Ohio Supreme Court emphasized that the claimants were injured while acting within the scope of their employment, a requirement of the non-owned automobile provision:

> In this case, the contract expressly provided liability coverage for "non-owned" vehicles. Under the specific language of the policy, "if you are a partnership a non-owned automobile does include any automobile owned by or registered in the name of a partner, but only while such automobile is being used in your business." There is no question that the 1980 Ford pickup truck occupied by the Selanders was an automobile owned by a partner and was being used in the partnership's business.... Under the policy's language, the pickup truck occupied by the Selanders at the time of the collision qualified as a "non-owned" vehicle. Given the determination that the Fivestar policy qualifies as an "automobile liability or motor vehicle policy" under R.C. 3937.18, the policy was re-

quired to offer UM/UIM coverage. *Abate v. Pioneer Mut. Cas. Co.* (1970), 22 Ohio St.2d 161, 51 O.O.2d 229, 258 N.E.2d 429. Since it did not, coverage arose by operation of law in the amount equal to the liability coverage of the policy, and appellees are entitled to compensation under the Fivestar policy.

85 Ohio St.3d at 544, 546, 709 N.E.2d at 1163–64, 1165.

Plaintiff Lawler argues that this Court should disregard the State Farm Policy's restriction that the automobile be "used in connection with your business." But the *Selander* court explicitly relied upon the fact that the injured parties had been operating the vehicle in furtherance of their employer's business. Subsequent to the issuance of the policy involved in this case, the Ohio General Assembly confirmed this interpretation. It adopted Ohio Rev.Code § 3937.18(J) to make clear that motor vehicle liability policies can condition coverage.[5]

responsibility under Ohio Rev.Code § 4509.01(K). The amended Ohio Rev.Code § 3937.18 provides

> (L) As used in this section, 'automobile liability or motor vehicle liability policy of insurance' means either of the following:
> (1) Any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by division (K) of section 4509.01 of the Revised Code, for owners or operators of the motor vehicles specifically identified in the policy of insurance;
> (2) Any umbrella policy of insurance.

1997 Ohio Laws 28 (H.B.261).
Subsection (L)(2) was later amended to read as follows:

> (2) Any umbrella liability policy of insurance written as excess over one or more policies described in division (L)(1) of this section.

1999 Ohio Laws 79 (S.B.57).

**5.** Effective September 3, 1997, Ohio Rev.Code § 3937.18(J) provided:

> J) The coverages offered under division (A) of this section or selected in accordance

with division (C) of this section may include terms and conditions that preclude coverage for bodily injury or death suffered by an insured under any of the following circumstances:

(1) While the insured is operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of a named insured, if the motor vehicle is not specifically identified in the policy under which a claim is made, or is not a newly acquired or replacement motor vehicle covered under the terms of the policy under which the uninsured and underinsured motorist coverages are provided;

(2) While the insured is operating or occupying a motor vehicle without a reasonable belief that the insured is entitled to do so, provided that under no circumstances will an insured whose license has been suspended, revoked, or never issued, be held to have a reasonable belief that the insured is entitled to operate a motor vehicle;

(3) When the bodily injury or death is caused by a motor vehicle operated by any

Arguing otherwise, Plaintiff Lawler suggests *Davidson v. Motorists Mut. Ins. Co.,* 91 Ohio St.3d 262, 744 N.E.2d 713 (2001), expanded the number of policies subject to claims for underinsured motorist coverage. *Davidson* did not. In *Davidson,* the Ohio Supreme Court was asked to find that underinsured motorist coverage arose by operation of law in a homeowner's policy. The homeowner's policy provided incidental coverage for certain vehicles.

In finding that the homeowner's policy did not create underinsured motorist coverage as a matter of law, the *Davidson* court said its decision in *Selander* had been wrongly interpreted for the proposition that "[w]here motor vehicle liability coverage is provided, even in limited form, [uninsured/underinsured motorist] coverage must be provided." 91 Ohio St.3d at 268, 744 N.E.2d at 717.

The Ohio Supreme Court found the homeowner's policy did not implicate the requirements of Ohio Rev.Code § 3937.18 even though it provided some incidental coverage of motorized vehicles. In finding that the homeowner's policy did not create underinsured motorist coverage as a matter of law, the Ohio Supreme Court rejected the plaintiff's request to find that the homeowner's policy was a motor vehicle liability policy because it contains a "residence employee" exclusion, affording protection against liability to employees for

injuries occurring in the course of their employment and arising out of the use of a motor vehicle. *Id.* at 265, 744 N.E.2d at 715.[6] *Davidson* cannot credibly be understood to support Plaintiff Lawler's position.

While it does not generally provide motor vehicle liability insurance, the State Farm Policy does make such coverage available in very limited circumstances in the other automobile provision. But in providing limited coverage in the other auto provision, the State Farm Policy limited the coverage to employees acting within the scope of their employment. As discussed in the following section, the other automobile provision limited who was insured to those hurt in an "automobile you do not own, lease, hire or borrow which is used in connection with your business."

Therefore, the Court holds that the State Farm Policy, a general commercial general liability policy, does not qualify as motor vehicle liability policy. As such, the State Farm Policy does not implicate the requirements of Ohio Rev.Code § 3937.18. The State Farm Policy does not create uninsured/underinsured motorist coverage as a matter of law.

## C. Whether Plaintiff Lawler is an insured under the State Farm Policy

Even if the Court had found the State Farm Policy created uninsured/underin-

---

person who is specifically excluded from coverage for bodily injury liability in the policy under which the uninsured and underinsured motorist coverages are provided.
1997 Ohio Laws 28 (H.B.281).

**6.** Since *Davidson,* the Ohio Court of Appeals, Eighth District, has held that a residence employee exclusion in a homeowner's policy cannot be construed to provide underinsured motorist coverage. *Davis v. Shelby Ins. Co.,* No. 78610, 2001 WL 674854, at *5 (Ohio Ct.App. June 14, 2001) ("Common sense

alone dictates that neither the insurer nor the insured bargained for or contemplated that such homeowner's insurance would cover personal injuries arising our of an automobile accident that occurred on a highway away from the insured's premises."); *Hillyer v. State Farm Fire & Cas. Co.,* No. 79176, 2001 WL 898424, at *2 (Ohio Ct.App. Aug. 2, 2001). These decisions support the notion that courts look to the terms of the policy at issue and rely on common sense when deciding whether a policy provides underinsured motorist coverage.

sured motorist coverage as a matter of law, State Farm's summary judgment motion would still succeed. Independent of whether uninsured/underinsured coverage exits, the Court also finds that Plaintiff Erin Lawler and Jeremy Lawler are not insureds under the State Farm Policy.

Arguing that the plaintiff is an insured, the plaintiff says State Farm did not offer and receive a proper rejection of underinsured motorist coverage when it offered Guiseppes Pizza the general commercial liability policy at issue in this case. Relying primarily on *Gyori v. Johnston Coca-Cola Bottling Group, Inc.*, 76 Ohio St.3d 565, 669 N.E.2d 824 (1996), and Ohio Rev. Code § 3937.18, Plaintiff Lawler claims she has underinsured motorist coverage under the State Farm Policy by operation of law.

Ohio Rev.Code § 3937.18(A)(1) requires that insurance companies which issue motor vehicle liability policies in Ohio offer uninsured/underinsured motorist coverage in an amount equal to liability coverage. Once offered, the insured may reject coverage or select the underinsured motorist coverage in an amount lower than the liability coverage.

In *Gyori*, the Ohio Supreme Court held that an insurer must offer uninsured/underinsured coverage in writing. 76 Ohio St.3d at 568, 669 N.E.2d 824; *Booth v. Guaranty Nat. Ins. Co.*, 114 F.Supp .2d 644, 646 (N.D.Ohio 2000). If the insurer does not make a valid offer of underinsured motorist coverage for a motor vehicle policy, underinsured motorist coverage comes into effect by operation of law. *Gyori*, 76 Ohio St.3d at 567, 669 N.E.2d at 826; *see also Linko v. Indemn. Ins. Co. of N. Am.*, 90 Ohio St.3d 445, 739 N.E.2d 338 (2000) (setting out the requirements for rejection of underinsured motorist coverage by a corporation).

As discussed in the previous section, the plaintiff says she is entitled to uninsured/underinsured motorist coverage that arises by law. The Defendant argues that "Erin Lawler is not an insured under the terms of the State Farm commercial general liability policy before this court." State Farm's Reply Brief at 5. To review this argument, the Court first discusses the legal background of the Ohio Supreme Court's much-criticized extension of underinsured motorist coverage to general commercial liability and business automobile policies that explicitly deny such coverage.

The plaintiff's argument derives from its interpretation of the Ohio Supreme Court's decision in *Scott-Pontzer v. Liberty Mutual Fire Ins. Co.*, 85 Ohio St.3d 660, 710 N.E.2d 1116 (1999). In that case, the court held that policy language excluding coverage for employees acting outside the scope of their employment did not apply to implied underinsured motorist coverage. The plaintiff says this holding means any limiting language in an insurance policy's definition of an insured is ineffective for purposes of implied underinsured motorist coverage.

But the court in *Scott-Pontzer* never held as much. Indeed, the court's analysis belies any such interpretation. The court stated that it would consider the effect of coverage limitations on uninsured/underinsured motorist coverage only *after* first deciding whether the plaintiff was an insured for purposes of the underlying policy. *Id.* at 662, 710 N.E.2d at 1118. The court never suggested it would ignore any limiting language in the definition of an insured.

Nevertheless, the plaintiff says the policy at issue in *Scott-Pontzer* is similar to the State Farm Policy. Important to a review of this argument is the actual language of the *Scott-Pontzer* policies, for the Ohio Supreme Court reviewed two policies

in that case. At the time of the accident in *Scott–Pontzer*, the employer had commercial automobile liability insurance policy and a separate "umbrella/excess" insurance policy. 85 Ohio St.3d at 661, 710 N.E.2d at 1117. The commercial automobile liability policy provided underinsured motorist coverage. *Id.*

Central to its finding that the underinsured motorist coverage extended to the injured employee, the *Scott–Pontzer* court found that the insurance policy named no specific insured employees of the corporation purchasing the insurance. The *Scott–Pontzer* policy named the corporation as the named insured. The business auto coverage form of the policy states that "[t]hroughout this policy the words you and your refer to the [n]amed [i]nsured shown in the [d]eclarations."

The business auto policy in *Scott–Pontzer* also contained an Ohio *un*insured motorist coverage form that defined an "insured" as including "[i]f you are an individual, any family member." 85 Ohio St.3d at 663, 710 N.E.2d at 1118. To repeat, the *Scott–Pontzer* business automobile policy defined insured as the employer corporation without further limitation. Only the *under*insured motorist coverage provision of the *Scott–Pontzer* business automobile policy restricted coverage to employees acting within the scope of their employment.

The *Scott–Pontzer* court held that underinsured motorist coverage should be found in the business automobile policy. In so deciding, the Ohio Supreme Court emphasized that the business automobile policy never narrowed the class of insureds to other than the corporation. Thus, in the face of ambiguous insurance policy language, the Ohio Supreme Court "construed the language most favorably to the insured" and found that "[i]t would be nonsensical to limit protection solely to the corporate entity, since a corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle." *Id.* at 664, 710 N.E.2d at 1119.

In contrast to the business automobile policy that defined insured as the corporation, the umbrella policy examined in *Scott–Pontzer* more narrowly defined who was insured under that policy. In setting out who was insured under the umbrella coverage, the *Scott–Pontzer* policy restricted coverage similar to the restriction involved in the State Farm Policy.[7]

However, in deciding that the plaintiff in *Scott–Pontzer* was an insured, the court did not necessarily rely on the umbrella policy's definition of an insured. The court seemed to have relied on the definition of an insured found in the general liability policy also at issue in *Scott–Pontzer*. In so doing, the court did not rely on any specif-

**7.** In *Scott–Pontzer*, "the umbrella excess liability policy contains a declaration page and a definition page for liability coverage only. The declaration page names Superior Dairy, Inc. as the named insured. Section II, page 6 of said policy entitled 'WHO IS AN INSURED' states as follows:
1. If you are designed (sic) in the Declaration as:
. . . .
c. An organization other than a partnership or joint venture, you are an insured. Your executive officers and directors are insureds; but only with respect to their duties as you officers or directors. Your stockholders are also insureds; but only with respect to their liability as stockholders.
2. Each of the following is also an insured:
a. Your employees, other than your executive officers; but only for acts within the scope of their employment by you Coverage for these insureds is subject to the following restrictions:*** (Emphasis omitted.)"
*Scott–Pontzer v. Liberty Mut. Fire Ins. Co.*, No. 1997 CA 00152, 1998 WL 516303, at *2 (Ohio Ct.App. Jan. 20, 1998).

ic language in the umbrella policy. Without affording any analysis or justification, the court noted the absence of any specific definition of an insured for purposes of underinsured motorist coverage and then stated that "as an employee ...," the plaintiff was "also an insured under [the] umbrella/excess insurance policy...." *Id.* at 665, 710 N.E.2d at 1120. From such summary treatment, it is not possible to find that the Ohio Supreme Court gave any consideration to the different provisions. Reading the opinion, one is left with the impression that the Ohio Supreme Court simply decided that since they found uninsured/underinsured coverage under the business automobile policy they might as well find it under the umbrella policy as well.

The court in *Scott–Pontzer* did not consider the effect of coverage exclusions and limitations until after it had decided the employee qualified as an insured under the policy. In the policy interpreted in *Scott–Pontzer*, the language excluding coverage for employees acting outside the scope of their employment did not appear in the definition of an "insured." Rather, the exclusion was set forth elsewhere in the policy.

But in finding the *Scott–Pontzer* policy vague as to whether the decedent was insured, the Ohio Supreme Court did not retreat from the requirement that courts first examine whether a claimant was insured under the policy. Indeed, the court made clear that the threshold issue in the case concerned the employee's status as an insured.

> The first issue is whether Pontzer, as an employee of Superior Dairy, was an 'insured,' for purposes of underinsured motorist coverage, under the policies issued to Superior Dairy by Liberty Fire and Liberty Mutual.... If we find Pontzer

was not an insured under the policies, then our inquiry is at an end.

*Id.* at 662, 710 N.E.2d at 1118.

■ In contrast to *Scott–Pontzer*, the policy language in this case more narrowly defines who is an "insured." Thus, the language defines insureds as those employees "only for acts within the scope of their employment for you" and specifically denies coverage for "bodily injury ... arising out of the ... use ... of any non-owned auto." By this, the State Farm Policy does not limit the coverage of an insured, but instead determines who is an insured in the first instance.

In contrast to *Scott–Pontzer*, the State Farm Policy specifically narrows those insured to executive officers, directors, and trustees, but only with respect to their duties as officers, directors, or trustees, and employees, but only for acts within the scope of their employment.

Guiseppes Pizza did not employ Jeremy Lawler. Although Guiseppes Pizza employed Erin Lawler, her husband Jeremy's death did not result within the scope of her employment.

Based on the foregoing, the Court finds that neither Jeremy Lawler or Erin Lawler are insureds under the State Farm Policy. And as *Scott–Pontzer* makes clear, only an insured has standing to assert a claim for underinsured motorist coverage implied by operation of law. Accordingly, the plaintiffs cannot recover underinsured motorist coverage benefits under the State Farm Policy by operation of law.

## IV. Conclusion

For the reasons discussed above, the Court grants Defendant State Farm's motion for summary judgement. Plaintiff Lawler's cross-claim against Defendant State Farm is dismissed.

IT IS SO ORDERED.

## ORDER

The Court has filed its Memorandum Opinion in the above captioned matter. The Court grants State Farm's motion for summary judgment and denies Plaintiff Lawler's motion for partial summary judgment. Plaintiff Lawler's claim against State Farm is dismissed. Accordingly, this action is terminated under Fed. R.Civ.P. 58.

IT IS SO ORDERED.