OPINION
{¶ 1} Plaintiff-appellant Deanna Moore appeals the March 14, 2002 Judgment Entry entered by the Delaware County Court of Common Pleas, granting summary judgment in favor of defendant-appellee Kemper Insurance Companies ("Kemper") and denying appellant's motion for summary judgment.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On August 3, 1999, appellant was on route to pick up her child from daycare when she was involved in a multi-vehicle accident. Christopher Saylor failed to yield his vehicle and collided with two other automobiles, including appellant's vehicle. As a result of the collision, appellant missed approximately seven months of work and is permanently injured. Appellant has undergone multiple surgeries, and may require additional surgeries in the future. Appellant was an employee of Bank One at the time of the accident. In October, 1998, Kemper issued a business automobile liability policy with a general liability limit of $1,000,000 to Bank One.
 {¶ 3} On August 3, 2001, appellant filed a Complaint in the Delaware County Court of Common Pleas, naming Saylor, the tortfeasor; State Farm Mutual Automobile Insurance Co., appellant's personal liability and underinsured carrier; and Kemper as defendants. Subsequently, Saylor's insurer and State Farm tendered their respective policy limits to appellant. On January 25, 2002, Kemper filed a Motion of Summary Judgment, seeking resolution of appellant's underinsured motorist claim against it. Appellant filed a Cross-Motion for Summary Judgment. Via Judgment Entry dated March 12, 2002, the trial court found the Kemper policy issued to Bank One was governed by Illinois law; therefore, and, under Illinois law, Kemper did not provide underinsured motorist coverage for appellant. Assuming Ohio law did apply, the trial court further found the UIM/UM replacement rejection form was not in compliance with Ohio law, and therefore UIM coverage arises by operation of law, but that appellant was not an "insured" under the policy.
 {¶ 4} It is from this judgment entry appellant appeals, raising the following assignment of error:
 {¶ 5} "I. THE TRIAL COURT IN PARTIALLY GRANTING AND DENYING BOTH APPELLANT'S AND APPELLEE'S CIV. R. 56 MOTIONS FOR SUMMARY JUDGMENT, BECAUSE THE COURT: A) FAILED TO FOLLOW CONTROLLING CASELAW WHEN IT DETERMINED THAT ILLINOIS LAW, RATHER THAN OHIO LAW, GOVERNED THE KEMPER POLICY; AND B) FAILED TO FIND THAT APPELLANT WAS INSURED UNDER THE POLICY."
 STANDARD OF REVIEW {¶ 6} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36, 506 N.E.2d 212.
 {¶ 7} Civ.R. 56(C) states, in pertinent part:
 {¶ 8} "Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . .A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."
 {¶ 9} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997), 77 Ohio St.3d 421, 429, 1997-Ohio-259,674 N.E.2d 1164, citing Dresher v. Burt, 75 Ohio St.3d 280,1996-Ohio-107, 662 N.E.2d 264.
 {¶ 10} It is based upon this standard we review appellant's assignment of error.
 IA {¶ 11} In subsection A of appellant's sole assignment of error, she asserts the trial court erred in granting summary judgment in favor of Kemper upon a finding Illinois law governs the Kemper policy. We agree.
 {¶ 12} In Ohayon v. Safeco Ins. Co. of Illinois, 2001-Ohio-100,91 Ohio St.3d 474, 747 N.E.2d 206, the Ohio Supreme Court held: "1. An action by an insured against his or her insurance carrier for payment of underinsured motorist benefits is a cause of action sounding in contract, rather than tort, even though it is tortious conduct that triggers applicable contractual provisions. (Citation omitted.)
 {¶ 13} "2. Questions involving the nature and extent of the parties' rights and duties under an insurance contract's underinsured motorist provisions shall be determined by the law of the state selected by applying the rules in Sections 187 and 188 of the Restatement of the Law 2d, Conflict of Laws (1971). (1 Restatement of the Law 2d, Conflict of Laws [1971], Section 205, applied.)" Id. at para. one and two of syllabus.
 {¶ 14} Although factually distinguishable from the instant action[1], we find Ohayon to be instructive.[2]
The Ohayon Court noted, in the absence of an express choice of law provision in a contract, a trial court should consider the factors enumerated in Restatement (2nd) of Conflict of Laws, Section 188, to determine which state's law is applicable. A trial court must determine which state has "the most significant relationship to the transaction and the parties." Id. at 477 (Citation omitted). To assist in such determination, a trial court should consider "the place of contracting, the place of negotiation, the place of performance, the location of the subject matter, and the domicile, residence, nationality, place of incorporation and place of business of the parties." Id.
 {¶ 15} The Ohayon Court continued, "the rights created by an insurance contract should be determined `by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship * * * to the transaction and the parties'." Id. at 479. (Emphasis and citation omitted). The Supreme Court explained, "in the case of an automobile liability policy, the parties will usually know beforehand where the automobile will be garaged at least during most of the period in question." Id. at 479-480. (Citation omitted).
 {¶ 16} Applying the Restatement factors, we acknowledge certain factors support the application of Illinois law. Bank One and Kemper contracted and negotiated the policy in Chicago, Illinois. Kemper issued and delivered the policy in Illinois. Kemper and Bank One were both located and had their principal places of business in Illinois, but both do business in Ohio. However, we find the factors the Ohayon Court found to be most significant, as discussed supra, favor the application of Ohio law to the instant matter.
 {¶ 17} At the time of the accident, Bank One owned and/or had covered over 600 vehicles under the Kemper policy. These vehicles were garaged in twenty-two separate states, as indicated by endorsement forms incorporated into the policy specific to those states. Of those 600+ vehicles, approximately 2-3% were located and/or principally garaged in Ohio. Included in the Kemper policy is an Ohio uninsured motorist coverage form. By offering Bank One UM/UIM coverage pursuant to R.C.3937.18, Kemper conveyed its intent Ohio law would apply. Bank One and Kemper acknowledged a portion of the vehicles would be principally garaged in Ohio, thus conceding their understanding a certain amount of risk in Ohio.
 {¶ 18} Based upon the foregoing, we sustain subsection A of appellant's sole assignment of error.[3]
 IB {¶ 19} Having determined the trial court erred in applying Illinois law, we now turn our attention to the trial court's alternative decision that if Ohio law applied, appellant was not an insured under Kemper's policy.
 {¶ 20} We begin by noting our agreement with the trial court UIM coverage arises by operation of law in this case because the replacement rejection form failed to satisfy the Ohio Supreme Court's requirements for a valid rejection as set forth in Linko v. Indemnity Ins. Co.
(2000), 90 Ohio St.3d 445. In so doing, the trial court followed this Court's decision in Pillo v. Stricklin (Dec. 31, 2001), Stark App. No. 2001CA00203, unreported.[4]
 {¶ 21} Despite having found UIM coverage arose by operation of law, the trial court nevertheless found no coverage existed because appellant was not an insured under Kemper's business auto policy. In so doing, the trial court relied upon the policy's definition of "insured" for liability coverage. The trial court reasoned: "Under Kemper's `Liability Coverage' an `insured' is defined as: (1) You for any covered `auto'; and (2) Anyone else while using with your permission a covered `auto' you own, hire or borrow except * * * [y]our `employee' or a member of his or her household. The `Declaration' page lists the `Named Insured' as `Bank One Corporation' and throughout the policy `the words `you' and `your' refer to the Named Insured shown in the Declaration.'" March 14, 2002 Judgment Entry at 17.
 {¶ 22} The trial court concluded because appellant was not in a covered auto at the time of the accident, she is not an insured under the policy. The trial court went on to find, assuming appellant was in a covered auto at the time of the accident, she still was not an insured because she owned the auto. The trial court cited Lawler v. Fireman'sFund Ins. Co., (N.D.Ohio. 2001), 163 F. Supp.2d 841, in support of its decision.[5]
 {¶ 23} Appellant counters she is an insured under Kemper's policy pursuant to the rationale set forth in Scott-Pontzer, but also specifically pursuant to Amendatory Endorsement #24 of the policy which added the following definition to who is an insured for purposes of liability coverage. Included as an insured under the endorsement is "Any `employee' of yours is an `insured' while using a covered `auto' you don't own, hire or borrow in your business or your personal affairs."
 {¶ 24} A covered auto for general liability purposes under Kemper's policy is defined as "any `auto.'" See pg. 1 of Business Auto Coverage Form and pg. 1 of Business Automobile Coverage Part Declaration's. When substituting this definition of covered auto into the definition section of an insured in the Amendatory Endorsement #24, it then includes as an insured "Any `employee' of Bank One Corporation * * * while using any auto Bank One Corporation [doesn't] own, hire or borrow in Bank One Corporation's business or Bank One Corporation's personal affairs." As such, appellant argues she is an insured under Kemper's policy.
 {¶ 25} Kemper responds the policy clearly states an employee can be an insured under the policy if operating a covered auto at the time of the accident, but the policy contains a schedule of "covered autos" and appellant's vehicle was not included in that schedule. Appellee offers no response to appellant's assertion the policy defines covered autos as "any auto" with respect to liability coverage nor does appellee respond to appellant's claim of coverage pursuant to Amendatory Endorsement #24. In light of the definition of covered auto found in the Business Auto Coverage Form, and the provision for liability coverage found in the Business Automobile Coverage Part Declarations, we agree with appellant she is an insured under Amendatory Endorsement #24 to Kemper's policy and entitled to UIM coverage thereunder by operation of law.
 {¶ 26} We also agree with appellant's argument she is an insured because the same ambiguity found in Scott-Pontzer exists in Kemper's policy. Because UIM coverage is created by operation of law, the definitions of an insured contained within the business auto liability policy become the applicable definitions for an insured under the UIM coverage created by operation of law. Therefore, for UIM purposes, the first definition of an insured is "Bank One Corporation for any auto." The same ambiguity found in Scott-Pontzer is also then present in the Kemper policy thereby extending UIM coverage to Bank One's employees.[6]
 {¶ 27} Accordingly, we sustain subsection B of appellant's sole assignment of error.
 {¶ 28} The judgment of the Delaware County Court of Common Pleas is reversed.
By: Hoffman, P.J., Farmer, J. and Wise, J. concur.
topic: choice of law
[1] Ohayon involved only a single risk insurance policy, while the policy at issue herein is one of multiple risks for automobiles covered in multiple states.
[2] See, e.g., Mayfield v. Chubb Ins. Co., Stark 5th App. No. 2001CA00244, 2002-Ohio-767.
[3] We recognize our application of Ohayon in Mayfield v. ChubbIns. Co., supra, resulted in an opposite result. However, unlike the policy at issue herein, the Mayfield policy did not list any vehicles garaged in Ohio.
[4] Kemper voices its disagreement with our Pillo decision and "reserves its right to reargue this issue depending upon the outcome of the case currently pending before the Ohio Supreme Court on this issue." Appellee's Brief at 12. While noting appellee's reservation, we adhere to our Pillo decision.
[5] The Lawler court stated the Scott-Pontzer court never suggested it would ignore limiting language found in the definition of an insured.
[6] Once having attained the status of an insured for UIM purposes, any restriction of coverage found in the business auto liability policy does not carry over to the UIM coverage created by operation of law.