OPINION
This appeal is brought by Nationwide Agribusiness Insurance Company from the judgment of the Court of Common Pleas, Seneca County, denying their motion for summary judgment and in turn granting summary judgment to plaintiff-appellees Kay and Frederick Zirger. For the following reasons, we reverse the trial court's decision and grant summary judgment to the Appellant.
On December 13, 1999, Kay A. Zirger, while driving a vehicle owned by her husband Frederick A. Zirger, was involved in a traffic accident with a motor vehicle driven by Richard C. Ferkel and owned by Richard L. Ferkel (the Ferkels). On January 12, 2001, Kay and Richard Zirger (the Zirgers) filed suit in the Seneca County Court of Common pleas naming Richard C. Ferkel, Richard L. Ferkel, United Ohio Insurance Company, and Nationwide Agribusiness Insurance Company as defendants and alleging the liability of each party for damages in excess of $25,000.00.
On February 4, 2001 the parties stipulated that, inter alia, the motor vehicle accident was solely and proximately caused by the negligence of Richard C. Ferkel and or Richard L. Ferkel and that the Zirgers had suffered a combined total of $400,000.00 in damages. Furthermore, the parties stipulated that the Zirgers settled their claim with the Ferkels, through which the Zirgers received $100,000.00 from a liability insurance policy issued by the Ferkel's insurance provider. Neither the tortfeasors nor their insurance provider are a party to this appeal.
At the time of the motor vehicle accident, the Zirgers were insured under a personal auto policy issued by the co-defendant United Ohio Insurance Company (United) that included uninsured/underinsured motorist coverage with a limit of $300,000.00. The availability of these funds remains at issue in the trial court and is scheduled to be resolved at trial by jury. The United Ohio Insurance Company is not a party to this appeal.
At all times material to this action, Kay Zirger was an employee of the Mohawk Local School District. The School District held two insurance policies issued by the defendant-appellant Nationwide Agribusiness Insurance Company (Nationwide); a Commercial Auto Policy and an Education Liability Policy. On May 30, 2001 the Zirgers filed a motion for summary judgment asserting entitlement, as a matter of law, to uninsured/underinsured motorist coverage under both Nationwide policies. Nationwide opposed the Zirger's motion and further moved for summary judgment on November 28, 2001 on the grounds that, as a matter of law, the Zirgers were not covered under either of the policies issued by Nationwide.
In an entry dated January 16, 2002, the trial court overruled Nationwide's motion for summary judgment and in the same order granted the Zirger's motion for summary judgment finding; 1) Kay Zirger was a named insured under the Nationwide Commercial Auto Policy since at the time of the accident she was performing duties related to school business; 2) a Nationwide Commercial Auto Policy provision excluding coverage was void; 3) Kay Zirger was a named insured under the Nationwide Education Liability policy under which uninsured/underinsured motorist coverage arose by operation of law. It is from this order that appellant Nationwide now appeals.
 Appellant raises the following assignments of error: "The Trial Court erred to the prejudice of Defendant-Appellant Nationwide Agribusiness Insurance Company when it overruled Nationwide Agribusiness Insurance Company's motion for summary judgment and granted Appellee's motion for summary judgment against Nationwide finding that uninsured/underinsured motorists coverage in the amount of 2,000,000 per occurrence is available to Appellees under the terms of Nationwide Agribusiness Insurance Company policy No. CA 0007438.
"The Trial Court erred to the prejudice of Defendant-Appellant Nationwide Agribusiness Insurance Company when it overruled Nationwide Agribusiness Insurance Company's motion for summary judgment and granted Appellee's motion for summary judgment against Nationwide finding that uninsured/underinsured motorists coverage in the amount of 2,000,000 per occurrence and 5,000,000 aggregate is available to Appellees under the terms of Nationwide Agribusiness Insurance Company policy No. CA 0007438."
 Summary Judgment Standard
We review the grant of a motion for summary judgment independently and do not give deference to the trial court's determination. Schuch v.Rogers (1996), 113 Ohio App.3d 718, 720, 681 N.E.2d 1388. Accordingly, we apply the same standard for summary judgment as did the trial court.Midwest Specialties, Inc. v. Firestone Tire Rubber Co. (1988),42 Ohio App.3d 6, 8, 536 N.E.2d 411. Summary judgment is proper when, looking at the evidence as a whole (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence, construed most strongly in favor of the nonmoving party, that reasonable minds could only conclude in favor of the moving party. Civ.R. 56(C); Horton v.Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, 686-687, 1995-Ohio-286. To make this showing the initial burden lies with the movant to inform the trial court of the basis for the motion and identify those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims.Dresher v. Burt (1996), 75 Ohio St.3d 280, 293, 1996-Ohio-107.
Once the movant has satisfied this initial burden, the burden shifts to the nonmovant to set forth specific facts, in the manner prescribed by Civ.R. 56(C), indicating that a genuine issue of material fact exists for trial. Id. at 293. The non-moving party is entitled to have the evidence construed most strongly in his favor. Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66.
 The Commercial Auto Policy
In the first assignment of error, defendant-appellant Nationwide asserts that the trial court erred when it granted summary judgment to the plaintiff-appellees; finding that uninsured/underinsured motorists coverage, hereinafter UM/UIM, in the amount of $2,000,000.00 per occurrence was available to Appellees under the terms of the Nationwide Commercial Auto Policy purchased by the Mohawk School District. For the reasons indicated below, we find this argument to be well taken.
Due to its dispositive nature, the first issue we examine is whether or not Kay Zirger is an "insured" entitled to uninsured/underinsured motorist coverage under the Nationwide Commercial Auto Policy. Insurance coverage is determined by reasonably construing the contract "in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed."Dealers Dairy Products Co. v. Royal Ins. Co. (1960), 170 Ohio St. 336, paragraph one of the syllabus. Nationwide asserts that the Zirgers are not "insureds" as defined by the plain language of the Commercial Auto Policy. The policy defines "insured" as full or part time employees "while in the course and scope of their employment by the `Named Insured'or while performing duties related to the `Named Insured's business." (emphasis added) The parties do not dispute that Kay Zirger's accident occurred while she was acting outside the scope of her employment, but rather argue whether or not the phrase "duties related to the `Named Insured's business" indicates coverage beyond "in the course and scope of employment."
Nationwide argues that "performing duties related to business" carries the same meaning as "in the scope of employment" and that the "or" separating the two phrases does not mean "in addition to," but rather further defines "in the scope of employment." Therefore, Nationwide insists, since Kay Zirger was injured as she was driving to her home, she was not acting in the scope of her employment and is not covered under the policy. Appellee, on the other hand, insists that the "or" indicates an intent to provide coverage for accidents which occur outside the scope of employment and that "or performing duties related to business" should be interpreted as "in addition to" those activities conducted in the "course and scope of employment."
Both parties submit perfectly reasonable interpretations for the use of the word "or". Nevertheless, we are unable to determine which of the meanings the parties intended and thus find the policy language to be ambiguous. "Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured."Reinbolt v. Gloor (Sept. 10, 2001), Henry App. No. 7-01-05, 2001-Ohio-2224, at ¶ 9; citing King v. Nationwide Ins. Co. (1988),35 Ohio St.3d 208, syllabus. Construing the language in a manner most favorable to the Zirgers, we find that the word "or" indicates that "performing duties related to the `Named Insured's' business" carries the meaning "in addition to" acts committed "while in the course and scope of their employment with the `Named Insured.'"
Anticipating our finding, Appellant argues, in the alternative, that even if we interpret "performing duties related to business" as something in addition to the "course and scope of employment," Kay Zirger still fails to meet the definitional requirements for an "insured" since she was not performing duties related to the School District's business at the time of the accident. Again, we find the policy language to be ambiguous. "In the scope of employment" is a phrase that carries a certain amount of legal significance, most of which has been carved out of numerous years of workman's compensation litigation. Under R.C.4123.01(C), an injury is not compensable under the Workers' Compensation Act unless it occurred in the course of and arising out of employment. An employee is in the "course of his employment" while he is performing "some required act done directly or indirectly in the service of the employer." Indus. Comm. v. Ahern (1928), 119 Ohio St. 41, 45. This does not include "personal business, disconnected with the employment."Id. An employee who sustains injury while traveling to or from a fixed place of employment is not acting in the scope of employment and is therefore precluded from participating in the Ohio Workers' Compensation Fund. Ruckman v. Cubby Drilling, Inc. (1998), 81 Ohio St.3d 117,1998-Ohio-455, 689 N.E.2d 917; MTD Products, Inc. v. Robatin (1991),61 Ohio St.3d 66, 68, 572 N.E.2d 661, 663. This is commonly referred to as the coming-and-going-rule. Hughes v. Hughes Enterprises Inc. (Dec. 14, 2000), Paulding App. No. 11-2000-11.
Appellant would have us identify "performing duties related to business," in the same context as those cases that define "in the course and scope of employment" and then apply the coming-and-going-rule to preclude coverage. However, because we have already determined that the word "or" within the definition of an "insured" indicates that "performing duties related to business" includes activities outside "the course and scope of employment," we cannot apply the coming-and-going-rule to the facts of this case. Since the Appellant fails to cite relevant law that would set parameters for what is and what is not "business related," and since the Nationwide policy does not define "business related" within the Commercial Auto Policy, we find "business related" to be ambiguous and therefore must apply a broad interpretation in favor of the Appellees.
The motor vehicle accident occurred as Kay Zirger was driving home from the Mohawk School District's Administration building where she had attended a special meeting concerning employee health benefits. Kay gave deposition testimony that she attended the meeting at the request of the school administration, who earlier that day had asked for volunteers from the staff to participate in the meeting. Kay did not work in the Administration building and was only there for the purpose of the special meeting. The trial court determined that Kay's attendance at the meeting and her subsequent return home sufficiently related to her duties with the school district. We agree with the well-reasoned conclusion of the trial court. Accordingly, we find that Kay Zirger was an "insured" as a matter of law according to the terms of the Commercial Auto Policy issued by Appellant to the Mohawk School District.
Next, Nationwide argues that even if Kay Zirger was an "insured" at the time of the accident, coverage for her injuries is excluded by Paragraphs C(5)(b) (c) of the Commercial Auto Policy which states:
"(C) "This insurance does not apply to:
"* * *
"5. Bodily Injury Sustained By:
"* * *
 "b. Any full or part-time employee * * * while occupying * * * any vehicle not owned by the named insured while in the course and scope of their employment by the named insured or while performing duties related to the conduct of your business if that vehicle is insured for uninsured motorist coverage on a primary basis under any other coverage form or policy "
 "c. Any full or part-time employee * * * while occupying * * * any vehicle not owned by the Named Insured while not in the course and scope of employment by the `Named Insured,' nor performing duties related to the conduct of `your' business."
Paragraph C(5)(c) attempts to exclude coverage to those individuals who would not meet the definition of an insured in the first place and therefore is a redundant and useless provision. Since we have already determined that Kay Zirger was an "insured," as she was engaged in conduct related to her business with the school district at the time of the accident, we will not entertain an argument that Paragraph C(5)(c) excludes coverage.
Paragraph C(5)(b), on the other hand, applies to those individuals who are "insureds" and attempts to excludes coverage in situations where the "insured" is involved in an accident while driving a vehicle not owned by the "named insured" if that vehicle is covered for UM/UIM on a primary basis by another policy. Nationwide correctly points out that Kay Zirger was driving her husband's vehicle and not a vehicle owned by the Mohawk Local School District. Nationwide further points out that the Zirger's vehicle was covered for UM/UIM under a primary policy issued by the co-Defendant United Ohio Insurance Company (United). Therefore, Nationwide insists, Paragraph C(5)(b) excludes coverage for Kay Zirger's accident. We agree with this rationale.
Appellees' first argument in response to Paragraph C(5)(b) is that the exclusion does not apply to the facts of this case since the United policy is not a primary policy but rather only provides UM/UIM on a pro rata basis. After thoroughly reviewing the UM/UIM policy issued by co-defendant United to the Zirgers, we are unable to find language to support Appellee's assertion. The "Other Insurance" provision of the United policy states:
 "If there is other applicable insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance."
 This section merely provides that if it is determined that another insurance policy covers the loss, United will share the cost of coverage with that insurance provider; in this case Nationwide. This provision does not change the fact that Kay Zirger was driving an automobile covered for UM/UIM on a primary basis by the United policy. Kay Zirger is a named insured on the United policy and the vehicle she was driving at that time of the accident is identified on that policy. Accordingly, we find that Paragraph C(5)(b) applies to the facts of this case.
Appellees' second argument in response to Paragraph C(5)(b) is that even if the exclusion does apply, the exclusion is invalid and unenforceable as a matter of law. Generally, R.C. 3937.18 mandates UM/UIM coverage if (1) the claimant is an insured under a policy that provides uninsured motorist coverage; (2) the claimant was injured by an uninsured motorist; and (3) the claim is recognized by Ohio tort law.State Farm Auto Ins. Co. v. Alexander (1992), 62 Ohio St.3d 397. However, at all times relevant to this action, R.C. 3937.18(J) included an enumerated and exclusive list of terms and conditions that insurance providers could include in UM/UIM coverage to preclude coverage for bodily injury or death.[1] Appellees argue that since the exclusion in Paragraph C(5)(b) of the Commercial Auto Policy does not fall directly in to one of the enumerated circumstances in R.C. 3937.18(J), it is contrary to law and therefore unenforceable. Conversely, Nationwide insists that Paragraph C(5)(b) is permissible under R.C. 3937.18(J)(1). We find both of these arguments to be incorrect.
To begin with, Nationwide's Paragraph C(5)(b) does not apply to R.C.3937.18(J)(1) as Nationwide insists. Paragraph C(5)(b) and R.C.3937.18(J)(1) advance different purposes and effectuate different results. R.C. 3937.18(J)(1) states that insurance providers may exclude all coverage for accidents involving vehicles, owned or used by the named insureds, that are not named on the policy. This type of exclusion is often referred to as an "other owned vehicle" exclusion. In contrast, Nationwide's Paragraph C(5)(b) attempts to exclude coverage for accidents involving vehicles not owned by the named insured if they are covered by UM/UIM on a primary policy. The coverage is contingent upon whether or not there is other insurance applicable, not whether or not the vehicle is named in the policy or owned by someone other than the named insured. Thus, had Kay Zirger not been covered for UM/UIM by the United policy, Paragraph C(5)(b) would not have excluded coverage. Clearly, R.C.3937.18(J)(1) is not applicable to the facts at bar.
However, we also disagree that R.C. 3937.18(J) is the exclusive provision regarding permissible exclusions as the Appellees submit. Recently, in Wallace v. Balint (2002), 94 Ohio St.3d 182,2002-Ohio-480, 761 N.E.2d 598 the Supreme Court of Ohio held that the former R.C. 3937.18(G), the applicable law in this matter, permitted insurers to include anti-stacking language in their underinsured motorist policies. Stacking occurs when one insured seeks coverage under more than one policy issued to himself or other family members. Id at 186. TheWallace decision silently recognized the subrogation of the Supreme Court's previous ruling in Savoie v. Grange Mutual Insurance Co. (1993),68 Ohio St.3d 1216, 625 N.E.2d 619. In Savoie, the Supreme Court announced a distinction between intrafamily and interfamily stacking, declaring that insurance companies could exclude the former but not the latter. The General Assembly responded to Savoie with Am. Sub. S.B. 20 in 1994[2] which stated a specific intent to overrule Savoie and to permit any motor vehicle insurance policy that includes UM/UIM coverage to include terms and conditions to preclude any and all stacking of such coverages, including interfamily and intrafamily stacking. Section § 7 to 10, Am. Sub. S.B. No. 20. (1994).
Paragraph C(5)(b) is an "anti-stacking" provision as it attempts to preclude coverage when an insured is injured in a vehicle that is already covered for UM/UIM by a primary policy. We recognize that Nationwide did not directly issue the Commercial Auto Policy to Kay Zirger and therefore the situation at hand does not fit in to the traditional definitions of stacking. Nevertheless, the fact remains that Appellee's are attempting to stack coverage available to Kay Zirger through her employer's insurance policy on top of coverage available to her through a personal insurance policy. Clearly, what the Appellees are attempting to accomplish falls within the definition of stacking. We find that Paragraph C(5)(b) of the Nationwide Commercial Auto Policy issued to the Mohawk school district is a valid anti-stacking provision and as such precludes coverage for Appellees' injuries. Accordingly, Appellant's first assignment of error is sustained.
 II. The Education Liability Policy
In the second assignment of error Nationwide argues that the trial court erred when it overruled their motion for summary judgment and granted the appellee's motion for summary judgment finding that UM/UIM coverage in the amount of $2,000,000 per occurrence and $5,000,000 aggregate was available to the appellees under the terms of an Education Liability Policy issued to the Mohawk School District. Nationwide's principal argument is that the Education Policy in question is not an "Automobile Liability or Motor Vehicle Liability Policy of Insurance" as defined by R.C. 3937.18(L) and therefore the duty to offer UM/UIM coverage does not arise. Nationwide's secondary argument is that even if coverage does arise, that coverage does not extend to the Zirgers as they are not insured under the Education Liability Policy. The Zirgers counter that the Education Policy is in fact an "umbrella policy," and as such should have included an offer for UM/UIM coverage. R.C. 3937.18(L)(2). Appellee's do not address the argument that they are not covered as "insureds" under the Education Liability Policy. For the following reasons, we find that while UM/UIM coverage does arise by operation of law within the Education Policy; Kay Zirger's injuries are not covered since she is not an "insured" under the Education Liability Policy.
The first issue we must address with respect to this assignment of error is whether the Education Liability Policy issued by Appellant to the Mohawk Local School District provides for UM/UIM coverage — either explicitly or by operation of law. The resolution of this issue has no bearing on the issue of whether the Zirgers are entitled to such coverage, which will be addressed infra. However, in the event no such coverage is provided by either the auto policy or the umbrella policy, there will be no need to address any of the additional issues raised by the parties. Accordingly, we will begin by determining whether such coverage exists.
According to the former R.C. 3937.18, insurance providers are required to offer UM/UIM coverage for every automobile liability policy issued in this state; in the absence of an express rejection, such coverage arises by operation of law. Abate v. Pioneer Mutual Cas. Co. (1970),22 Ohio St.2d 161; Overton v. Western Reserve Group (Dec. 8, 1999), Wayne App. No. 99CA0007. An "Automobile Liability or Motor Vehicle Liability Policy of Insurance" is defined by the former R.C. 3937.18(L) as either of the following:
 "(1) Any policy of insurance that serves as proof of financial responsibility, * * *, for owners or operators of the motor vehicles specifically identified in the policy of insurance;
 "(2) Any umbrella liability policy of insurance written as excess over one or more policies described in division (L)(1) of this section."
The Education Liability Policy issued to the Mohawk School District states that Nationwide shall provide coverage for any claim of liability arising out of acts or omissions by the school district or its employees. It is undisputed that there was never an offer for UM/UIM coverage under the Education Liability Policy. Appellees argue that certain language in the Education Policy providing an exception to an exclusion operates to transform the general liability policy into an "umbrella" policy, thereby making it an "Automobile Liability or Motor Vehicle Liability Policy of Insurance" as defined by R.C. 3937.18(L)(2). The provision at issue reads:
"B. Exclusions
 "This insurance does not apply:
 "* * *
 "2. To any liability arising from the ownership, operation, maintenance or use of any owned or non-owned automobile. * * * This exclusion shall not apply to
 * * *
 "(f) Items (2) [the operation of any "automobile" in Driver Education classes], (4) [the training or supervision of drivers or their aides], (5) [the activities of drivers or their aides in supervising people "occupying" any vehicle], and (6) [the training or supervision of employees who are "loading and unloading" an "automobile"] above, if excluded under the "named insured's" automobile or fleet liability policy." (Emphasis added.)
Appellant argues that paragraph B(2)(f) above is merely an exception to an exclusion and does not make the entire Education Policy an umbrella policy nor does it provide more insurance coverage than does the Commercial Auto Policy. We disagree with Appellant on this point. Undoubtedly, via paragraph B(2)(f) above, the Education Liability policy provides direct coverage for any liability that arises during various driver's education activities if the Commercial Auto Policy excludes coverage for that liability. In other words, if the Commercial Auto Policy will not cover the liability, the Education Liability Policy will. To say that some coverage is not more than zero coverage is nonsensical. As the appellees correctly point out, the "if excluded" language of paragraph B(2)(f) above operates to fill in "gaps in coverage," that would arise under the school's Commercial Auto Policy and creates excess or umbrella insurance over that policy in limited circumstances. Therefore, the Education Liability Policy is an "Automobile Liability or Motor Vehicle Liability Policy of Insurance" as defined by R.C. 3937.18(L)(2) and UM/UIM coverage arises under the policy by operation of law.
The next issue we address is whether or not Appellee's are entitled to UM/UIM coverage under the Education Liability Policy. Appellant answers in the negative, arguing that the Zirgers are not "insureds" as defined by the plain language of the policy. We find this argument to be well taken.
The Education Liability Policy issued to the Mohawk Local School District by Nationwide defines "insureds" as follows:
"Section IV. Definitions
 "1. The word `insured' means the school district, the County Board of Mental Retardation/Developmental Disability (MRDD) and any other organization named in the Declarations and any of the following while acting in the scope of his or her duties as:
 Any full or part time employee of the organization named in the Declarations;"
 Appellant points out that neither of the Zirgers were acting in the scope of employment with the Mohawk Local School District when the accident at issue took place and therefore the Zirgers are not entitled to coverage under the Education Liability Policy. Notably, Appellees fail to address this argument other than to say, "As was the case in Scott-Pontzer [v. Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660, 1999-Ohio-292, 710 N.E.2d 1116], there is no language in the Education Liability Policy here intending to restrict coverage for purposes of uninsured/underinsured motorist coverage."
In Scott-Pontzer v. Liberty Mut. Fire Ins. Co., the Supreme Court of Ohio determined that UM/UIM coverage arose by operation of law under a general business liability insurance policy issued to Scott-Pontzer's employer by Liberty Mutual Insurance Company. The Court then examined whether a provision within the liability portion of that policy, which excluded coverage to insured's acting outside the scope of employment, could be applied to the implied UM/UIM coverage. The Supreme Court concluded in the negative reasoning that, "any language in the . . . umbrella policy restricting insurance coverage was intended to apply solely to excess liability coverage and not for purposes of underinsured motorist coverage." Id. at 666. Accordingly, the Court held that there was no requirement in the general liability policy that the insured had to be acting during the scope of his employment to qualify for UIM coverage. Id. We construe Appellees' argument to be that the holding inScott-Pontzer should be applied to the facts sub judice in order to determine that the language in the Nationwide Education Liability Policy restricting coverage to employees acting in the scope of employment is inapplicable. On the contrary, we find the Education Liability Policy in the current case to be distinguishable from the policy in Scott-Pontzer.
Recently, in Lawler v. Fireman's Fund Ins. Co. (2001),163 F. Supp.2d 841, 856 the United States District Court for the Northern District of Ohio distinguished Scott-Pontzer as follows:
 "The court in Scott-Pontzer did not consider the effect of coverage exclusions and limitations until after it had decided the employee qualified as an insured under the policy. In the policy interpreted in Scott-Pontzer the language excluding coverage for employees acting outside the scope of their employment did not appear in the definition of an `insured.' Rather, the exclusion was set forth elsewhere in the policy. * * *
 "In contrast to * * * the policy language in this case more narrowlydefines who is an `insured.' Thus, the language defines insureds as thoseemployees `only for acts within the scope of their employment for you'* * * By this, the State Farm Policy does not limit the coverage of aninsured, but instead determines who is an insured in the first instance.
 "In contrast to Scott-Pontzer, the State Farm Policy specificallynarrows those insured to executive officers, directors, and trustees, butonly with respect to their duties as officers, directors, or trustees,and employees, but only for acts within the scope of their employment."Id.
We find the district court's rationale in Lawler to be persuasive. In the matter now before this court, the Education Liability Policy defines an "insured" as an employee acting in the scope of employment. The policy does not exclude coverage to those employees not acting in the scope such as was the case in Scott-Pontzer. Based on this distinguishing fact, we do not find Scott-Pontzer to be controlling in this matter. Accordingly, Appellees are not "insureds" under the Education Liability Policy and therefore are not entitled to coverage under that policy as a matter of law. Appellant's second assignment of error is sustained.
In conclusion we find that the trial court erred when it granted summary judgment to Appellees and denied summary judgment to Appellants with respect to coverage under both the Commercial Auto Policy and the Education Liability Policy. For the aforementioned reasons, we find as a matter of law that Appellees are not entitled to uninsured/underinsured motorist coverage under either the Commercial Auto Policy or the Education Liability Policy issued to the Mohawk Local School District by Nationwide Agribusiness Insurance Company. For the reasons stated it is the order of this Court that the judgment of the Court of Court of Common Pleas, Seneca County is hereby REVERSED and summary judgment is hereby granted in favor of the Appellant.
Judgment reversed and cause remanded.
HADLEY and WALTERS, JJ., concur.
[1] R.C. 3937.18(I), as amended by Senate Bill 2001 97, eff. 10-31-01, now provides: Any policy of insurance that includes uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages may include terms and conditions that preclude coverage for bodily injury or death suffered by an insured under specified circumstances, including but not limited to any of the following circumstances.
[2] eff. 10-20-94