DECISION AND JUDGMENT ENTRY
{¶ 1} Lawrence and Carrie Waters appeal the Athens County Common Pleas Court's decision granting summary judgment to State Farm Fire and Casualty Company (State Farm). The Waters contend the trial court erred in concluding that the commercial general liability (CGL) policy issued by State Farm did not provide uninsured/underinsured motorist coverage by operation of law. We conclude that State Farm's CGL policy is a motor vehicle policy and thus, State Farm was required to offer uninsured/underinsured motorist coverage. Because State Farm did not offer uninsured/underinsured motorist coverage, it exists by operation of law. However, we conclude that the Waters are not entitled to underinsured motorist coverage because they are not "insureds" under the CGL policy.
 {¶ 2} In January 1998, Lawrence and Carrie Waters were involved in an automobile accident. The accident occurred when a vehicle driven by Thomas William George traveled left of center and struck the Waters' vehicle head on. In January 2000, the Waters filed a complaint against Melissa Faith George, the executrix of Mr. George's estate. After receiving consent from State Farm, the Waters settled with Mr. George's insurance company for the policy limits of $100,000. In addition, the Waters received $400,000 through a federal tort claim.
 {¶ 3} At the time of the accident, the Waters maintained a homeowners insurance policy through State Farm. Carrie Waters also maintained a CGL policy through State Farm. In December 2001, the Waters filed an amended complaint, adding State Farm as a defendant. The complaint sought a declaratory judgment establishing that the Waters were entitled to underinsured motorists benefits under their policies with State Farm. The trial court ultimately granted summary judgment to State Farm. The Waters appeal from that entry, raising the following assignments of error: "ASSIGNMENT OF ERROR NO. 1 — The trial court erred in finding that plaintiffs/appellants' homeowners insurance policy did not provide uninsured/underinsured motorist coverage by operation of law. ASSIGNMENT OF ERROR NO. 2 — The trial court erred in finding that their business insurance liability policy did not provide uninsured/underinsured motorist coverage by operation of law. ASSIGNMENTOF ERROR NO. 3 — The trial court erred in failing to find that defendant/appellee is not entitled to a set off of any amounts paid to plaintiffs/appellants by the United States of America."
 {¶ 4} The Waters have withdrawn their first assignment of error based on the Supreme Court of Ohio's decision in Hillyer v. State FarmFire Cas. Co., 97 Ohio St.3d 411, 2002-Ohio-6662, 780 N.E.2d 262. Accordingly, we do not address it.
¶ 5 In their second assignment of error, the Waters contend the trial court erred in concluding that State Farm's CGL policy did not provide uninsured/underinsured motorist coverage by operation of law. They argue that the CGL policy is a motor vehicle policy because it contains a "parking exception" and provides liability coverage for non-owned vehicles. They contend that State Farm's failure to offer uninsured/underinsured motorist coverage when it issued the "motor vehicle" policy gives rise to uninsured/underinsured motorist coverage by operation of law. Moreover, the Waters argue that the CGL's definitional limitation on who is an insured applies only to liability coverage, not to uninsured/underinsured motorist coverage that arises by operation of law.
 {¶ 6} State Farm admits that it did not offer uninsured/underinsured motorist coverage with the CGL policy; however, State Farm contends it was not required to offer uninsured/underinsured motorist coverage because the CGL policy is not a motor vehicle policy. State Farm points out that the CGL policy generally excludes coverage for automobile claims with only a few limited exceptions. State Farm also argues that because the Waters were not "insureds" under the CGL policy at the time of the accident, they are not entitled to underinsured motorist coverage.
 {¶ 7} We review a trial court's decision to grant summary judgment on a de novo basis. Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105,1996-Ohio-336, 671 N.E.2d 241. Accordingly, we conduct an independent review of the record and afford no deference to the trial court's determination. Brown v. Scioto Cty. Bd. Of Commrs. (1993),87 Ohio App.3d 704, 711, 622 N.E.2d 1153. Summary judgment under Civ.R. 56(C) is appropriate when: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence, when viewed most strongly in favor of the non-moving party, that reasonable minds can come to a conclusion only in favor of the moving party. Grafton, supra.
 {¶ 8} We will first address the issue of whether State Farm's CGL policy provides uninsured/underinsured motorist coverage by operation of law, for if it does not, there is no need to address the other issues raised by the Waters.
 {¶ 9} Carrie Waters' CGL policy with State Farm had an effective date of June 26, 1997 through June 26, 1998. The CGL policy provides: "We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury, property damage, personal injury oradvertising injury to which this insurance applies. * * * "
(Emphasis in original.) The CGL policy also contains specified exclusions to business liability coverage. A number of the exclusions are followed by exceptions. The relevant policy portions state: "Under Coverage L, this insurance does not apply: * * * 7. to bodily injury or propertydamage arising out of the ownership, maintenance, use or entrustment to others of any aircraft, auto or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and loading orunloading.
This exclusion does not apply to: * * * c. parking an auto on, or on the ways next to, premises you own or rent provided the auto is not owned by or rented or loaned to you or any insured; e. bodily injury orproperty damage arising out of the use of any non-owned auto in your business by any person other than you. . . ." (Emphasis in original.) The State Farm policy defines a non-owned auto as "any auto you do not own, lease, hire or borrow which is used in connection with your business." (Emphasis in original.)Since the non-owned auto exception provides coverage for injury and damage arising from the business use of non-owned autos, it appears that the exception is designed to provide coverage for claims of vicarious liability.
 {¶ 10} At the time State Farm issued its CGL policy, R.C. 3937.18
required an insurance company to offer uninsured/underinsured motorist coverage any time it issued an automobile liability or motor vehicle liability policy of insurance.[1] An insurance company's failure to offer uninsured/underinsured motorist coverage results in such coverage becoming part of the policy by operation of law. Abate v. Pioneer Mut.Cas. Co. (1970), 22 Ohio St.2d 161, 163, 258 N.E.2d 429. Thus, we must determine whether State Farm's CGL policy is a motor vehicle liability policy. If it is a motor vehicle liability policy, then State Farm's failure to offer uninsured/underinsured motorist coverage results in its existence by operation of law.
 {¶ 11} In Selander v. Erie Ins. Group, 85 Ohio St.3d 541,1999-Ohio-287, 709 N.E.2d 1161, the Supreme Court of Ohio considered whether a general business liability policy that provided coverage for non-owned and hired motor vehicles qualified as a motor vehicle liability policy. Finding that it did, the Court stated: "[t]he fact that a policy provides liability coverage for non-owned and hired motor vehicles is sufficient to satisfy the requirement of R.C. 3937.18 that a motor vehicle policy be delivered in this state with respect to any motor vehicle registered or principally garaged in this state." Id. at 544-45.
 {¶ 12} State Farm argues that its policy differs from the policy considered in Selander, which contained a specific endorsement providing automobile liability coverage for hired and non-owned automobiles. SeeSelander, 85 Ohio St.3d at 543. State Farm's policy generally excludes automobile liability coverage but contains an exception for non-owned autos. State Farm argues that the incidental coverage provided by the exception is insufficient to render the CGL policy a motor vehicle liability policy. We disagree.
 {¶ 13} In Davidson v. Motorists Mut. Ins. Co., 91 Ohio St.3d 262,2001-Ohio-36, 744 N.E.2d 713, the Supreme Court of Ohio considered whether a homeowner's policy that provided liability coverage for recreational vehicles qualified as a motor vehicle liability policy. The Court determined that it did not. In distinguishing Selander, the Court stated: "In contrast, the policy at issue in this case is a homeowner's policy that does not include coverage for liability arising out of the use of motor vehicles generally. Instead, the homeowner's policy provides incidental coverage to a narrow class of motorized vehicles that are not subject to motor vehicle registration and are designed for off-road use or are used around the insured's property." Davidson,91 Ohio St.3d at 267. In Hillyer v. State Farm Fire Cas. Co., 97 Ohio St.3d 411,416, 2002-Ohio-6662, 780 N.E.2d 262, the Supreme Court of Ohio further clarified its decision in Davidson, stating: "The coverage in Davidson
was not incidental merely because it involved recreational vehicles. Instead, it was incidental primarily because coverage of those vehicles was remote from and insignificant to the type of overall coverage the policy provided."
 {¶ 14} In Hillyer, supra, the Supreme Court of Ohio considered whether the residence-employee provision in a homeowner's insurance policy rendered the policy a motor vehicle liability policy. The Court held: "a residence-employee clause in an insurance policy that provides coverage incidental to home ownership does not convert the policy into a motor vehicle policy * * *." Id. at 413. The Court noted that coverage under the residence-employee clause arose anytime an employee was injured while in the course of employment, not just when an automobile was involved. Id. at 416. "`The defining characteristic of coverage is the person injured * * * not the fact that a motor vehicle was involved. * * * [T]he fact that an automobile may be involved is incidental to coverage * * *.'" Id. at 416, quoting Panozzo v. Allstate Ins. Co. (Sept. 13, 2001), Cuyahoga App. No. 79083.
 {¶ 15} Recently, the Eighth District Court of Appeals addressed a non-owned auto exception similar to the one at issue here. In Mazzockiv. State Farm Fire Cas. Co., Cuyahoga App. No. 81274, 2003-Ohio-745, the court concluded that a non-owned auto exception did not render the CGL policy a motor vehicle policy. In distinguishingSelander, the court noted that the Selander policy contained an express provision of coverage, whereas the Mazzocki policy provided coverage in an exception to a general exclusion. Id. at ¶ 20. The court went on to state: "Similar to the policies at issue in Davidson and Hillyer, that coverage is limited by class of vehicles and is available only under narrow circumstances; namely under the parking and non-owned business use exceptions. This narrow class of coverage supports that it is remote from and insignificant to the overall type of coverage afforded under the commercial general liability policy of insurance at issue in this case."Id. However, for the reasons that follow, we are not persuaded.
 {¶ 16} Unlike the coverage considered in Davidson and Hillyer, the coverage provided by this exception is not incidental to the overall coverage provided by the CGL policy. The very purpose of the non-owned auto exception is to provide coverage for claims of vicarious liability arising out of automobile accidents involving non-owned autos. Therefore, coverage under this exception will only arise when a non-owned auto is involved. The defining characteristic of coverage is the fact that it is designed to provide indemnification when an automobile causes the loss, while being used for business purposes. Accordingly, the coverage provided by the non-owned auto exception is not incidental to the overall coverage provided by the CGL policy.
 {¶ 17} Moreover, we find no significance in the fact that the liability coverage for non-owned autos is contained in an exception to an exclusion rather than in a specific endorsement. In determining whether a policy of insurance is a motor vehicle liability policy, we look at whether the policy provides motor vehicle liability coverage. If the policy provides motor vehicle liability coverage, it is a motor vehicle liability policy, regardless of how or where in the policy such coverage is provided. Selander, 85 Ohio St.3d at 544.
 {¶ 18} In support of its argument that the CGL policy is not a motor vehicle policy, State Farm also relies on Lawler v. Fireman's FundIns. Co. (N.D.Ohio. 2001), 163 F. Supp.2d 841. In Lawler, the court examined a CGL policy containing non-owned auto coverage identical to the coverage at issue here. See Id. at 845. The Lawler court concluded that the non-owned auto coverage did not render the CGL policy a motor vehicle liability policy. See Id. at 853. In distinguishing Selander, the court focused on the fact that the claimants in Selander were injured while acting within the scope of their employment. Id. at 853. According to theLawler court, the Supreme Court of Ohio relied on the scope of employment factor when it concluded that the coverage in Selander was a motor vehicle policy. Id. at 852. Because the Lawler claimant was injured while operating his personal car for personal business, the court concluded that the policy did not qualify as a motor vehicle liability policy. Id. at 843,853.
 {¶ 19} Recently, our colleagues in the Eighth District Court of Appeals had an opportunity to address Lawler. In Workman v. CarlisleEngineered Products, Inc., Cuyahoga App. Nos. 81179, 81211, 2003-Ohio-293, at ¶ 21, the court stated: "The reasoning in Lawler
is flawed because it confuses the limitations on coverage with the classification of the policy as a motor vehicle policy. As we readSelander and Davidson, a policy either qualifies as an automobile policy or it does not based upon the express policy terms. If a policy qualifies as such, the provisions of R.C. 3937.18 require an offering of UIM coverage. Yet, if we accept the reasoning employed by the court inLawler, a policy could be both a motor vehicle policy and not depending on what circumstances give rise to the claim for coverage, that is whether the claimant suffered injury in the course and scope of employment. For that reason, we decline to follow Lawler." (Footnotes omitted.) We agree with our colleagues in the Eighth District in this regard. Under Lawler, determining whether an insurance policy qualifies as a motor vehicle policy depends upon the circumstances surrounding the incident giving rise to the claim for uninsured/underinsured motorist coverage. However, former R.C. 3937.18 required an insurance company to offer uninsured/underinsured motorist coverage when it issued a motor vehicle liability policy. In order to comply with the statute, an insurance company must be able to determine, at the time it issues the policy, whether its insurance policy is a motor vehicle policy. Therefore, the determination of whether an insurance policy is a motor vehicle policy cannot be dependant upon the circumstances surrounding the incident giving rise to the claim for uninsured/underinsured motorist coverage. Thus, we find the reasoning in Lawler unpersuasive on this issue.
 {¶ 20} Like the policy in Selander, State Farm's CGL policy provides liability coverage for non-owned automobiles. Based on Selander, we conclude that State Farm's CGL policy is a motor vehicle policy. Therefore, State Farm was required to offer uninsured/underinsured motorist coverage when it issued the CGL policy. Because State Farm failed to offer such coverage, it becomes part of the CGL policy by operation of law.
 {¶ 21} Because we conclude that the non-owned auto coverage provided in State Farm's CGL policy renders the policy a motor vehicle liability policy, we need not address what effect the "parking exception" has on the policy.
 {¶ 22} While we have concluded that the CGL policy provides uninsured/underinsured motorist coverage by operation of law, it does not necessarily follow that the Waters are entitled to coverage. The declarations page in State Farm's CGL policy identifies the named insured as Carrie J. Waters dba Christmas at Carrie's. The declarations page also indicates that the named insured is an individual. The policy states: "[t]hroughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations * * *." The policy contains a section entitled "SECTION II DESIGNATION OF AN INSURED." This section provides: "WHO IS AN INSURED 1. If you are designated in the Declarations as: an individual, you and your spouse are insureds but only with respect to the conduct of a business of which you are the sole owner; * * *" (Emphasis in original.)
 {¶ 23} To determine whether the Waters are entitled to underinsured motorist coverage, we must determine whether they are "insureds" under the policy issued by State Farm. See Scott-Pontzer v.Liberty Mut. Fire Ins. Co., 85 Ohio St.3d 660, 662, 1999-Ohio-292,710 N.E.2d 1116. The Waters argue that the limitation on the definition of insured applies only to liability coverage and not to underinsured motorist coverage that arises by operation of law. Presumably, the Waters' argument relies on the Supreme Court of Ohio's statement inScott-Pontzer that "any language in the Liberty Mutual umbrella policy restricting insurance coverage was intended to apply solely to excess liability coverage and not for purposes of underinsured motorist coverage." (Emphasis in original.) Id. at 666.
 {¶ 24} State Farm's CGL policy differs from the policies at issue in Scott-Pontzer. In Scott-Pontzer, the Supreme Court of Ohio considered the significance of an automobile liability policy and umbrella policy in which the named insured was a corporation. Analyzing the automobile liability policy, the court determined that having a corporation as the named insured created ambiguity since a corporation can only act through natural persons. Id. at 664. Thus, the court found that Pontzer, an employee of the corporation, was an insured for purposes of the uninsured/underinsured motorist coverage provided by the automobile liability policy. Id. at 665. The court also found that Pontzer was an insured under the umbrella policy, stating "we conclude that Pontzer, as an employee of Superior Dairy, was also an insured under Superior Dairy's umbrella/excess insurance policy * * *." Id. In determining that Pontzer was an insured for purposes of the umbrella policy, it appears that the court again relied on the ambiguity created by having a corporation as the named insured.
 {¶ 25} Unlike the policies at issue in Scott-Pontzer, the named insured in State Farm's CGL policy is not a corporation. Rather the named insured in State Farm's policy is a sole proprietor, Carrie J. Waters dba Christmas at Carrie's. As the Supreme Court of Ohio recognized inPatterson v. V M Auto Body (1992), 63 Ohio St.3d 573, 574-75,589 N.E.2d 1306, "[a] sole proprietorship has no legal identity separate from that of the individual who owns it." Because State Farm's policy names an individual as the insured, there is no ambiguity.
 {¶ 26} Moreover, State Farm's CGL policy contains a specific section that defines who is an insured and under what circumstances. According to that section, the Waters are only insureds "with respect to the conduct" of Carrie Waters' business.
 {¶ 27} The Waters argue that this definitional section does not apply to underinsured motorist coverage that arises by operation of law. In Lawler, 163 F. Supp.2d 841, the court addressed a similar argument. Discussing Scott-Pontzer, the Lawler court stated: "The plaintiff's argument derives from its interpretation of the Ohio Supreme Court's decision in Scott-Pontzer * * *. In that case, the court held that policy language excluding coverage for employees acting outside the scope of their employment did not apply to implied underinsured motorist coverage. The plaintiff says this holding means any limiting language in an insurance policy's definition of an insured is ineffective for purposes of implied underinsured motorist coverage. But the court inScott-Pontzer never held as much. Indeed, the court's analysis belies any such interpretation. The court stated that it would consider the effect of coverage limitations on uninsured/underinsured motorist coverage only after first deciding whether the plaintiff was an insured for purposes of the underlying policy. Id. at 662, 710 N.E.2d at 1118. The court never suggested it would ignore any limiting language in the definition of an insured." Id. at 854. We agree with Lawler in this regard. UnderScott-Pontzer, we must first determine whether the Waters are insureds for purposes of underinsured motorist coverage. Scott-Pontzer,85 Ohio St.3d at 662. In order to do so, we must look somewhere for the definition of an insured. Here, the policy provides a specific section defining an insured.
 {¶ 28} It is apparent that the parties only intended State Farm's CGL policy to insure the Waters "with respect to the conduct" of Christmas at Carries. Even if the parties could have imagined that the CGL policy would include uninsured/underinsured motorist coverage, they could not have dreamed that a business liability policy would provide underinsured motorist coverage to the Waters when they were engaged in personal activities.
 {¶ 29} State Farm's CGL policy specifically states that the Waters are insureds "with respect to the conduct" of Christmas at Carries. At the time of the incident giving rise to the claim for underinsured motorist coverage, the Waters were not engaged in an activity related to Christmas at Carries. Thus, the Waters are not "insureds" under State Farm's CGL policy. Because the Waters are not "insureds" they are not entitled to underinsured motorist coverage. Accordingly, the Waters second assignment of error is overruled, albeit for reasons that differ from the trial court's decision.
 {¶ 30} In their third assignment of error, the Waters argue that State Farm is not entitled to set off the $400,000 settlement with the United States of America. Because we find that the Waters are not entitled to underinsured motorist coverage under State Farm's policy, we need not address this issue.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. Kline, J.: Concur in Judgment and Opinion.
[1] R.C. 3937.18 was amended effective September 3, 1997. The amended version defined "automobile liability or motor vehicle liability policy of insurance" as either "(1) Any policy of insurance that serves as proof of financial responsibility is defined by division (K) of section 4509.01
of the Revised Code, for owners or operators of the motor vehicles specifically identified in the policy of insurance; (2) Any umbrella liability policy of insurance." R.C. 3937.18(L). However, this version of R.C. 3937.18 was not in effect at the time State Farm issued its CGL policy.